Phyllis MURRAY, Appellant,

v.

EASTERN KENTUCKY UNIVERSITY,
Appellee.

No. 2008–CA–000561–MR.

Court of Appeals of Kentucky.

Dec. 11, 2009.

Discretionary Review Denied by
Supreme Court Jan. 14, 2011.

Edward E. Dove, Lexington, KY, for appellant.

Stephen L. Barker, Joshua M. Salsburey, Lexington, KY, for appellee.

Before ACREE and LAMBERT, Judges; HARRIS,[1] Senior Judge.

## OPINION

ACREE, Judge.

Phyllis Murray appeals from a summary judgment of the Madison Circuit Court dismissing her claims of gender and disability discrimination against Eastern Kentucky University (EKU). We affirm.

In 1989, EKU hired Murray as a part-time faculty member. After three years, and believing she could soon attain her doctorate before the beginning of the 1993 fall term, Murray applied for a full-time, tenure-track position. Although she did not get that job, she stayed on in her part-time position. Murray had not met her self-imposed goal for obtaining her doctorate when, in 1994, she again applied for a full-time, tenure track-position. Again, she represented that obtaining her degree was imminent. EKU agreed to hire her.

The employment contract initially hired her for the 1994–95 academic year. A new contract was to be executed each year of the five-year probationary period, during which Murray was required to obtain her doctorate. If that degree was not completed by the end of the fifth year, the 1998–1999 academic year, EKU would issue a one-year terminal contract, after which the employment would end.

In the spring of 1995, Murray was diagnosed with breast cancer. Murray underwent a mastectomy, chemotherapy, several surgeries, and other treatments to combat the cancer. Murray later tried to negotiate an amendment to her contract to remove the requirement that she obtain her doctorate before the end of the 1998–1999 academic year. Her department chairman, Donald Calitri, on behalf of EKU, would not agree to change the terms of the contract.

Again, in the spring of 1999, Murray sought modification of the terms of her employment agreement. This time she was successful. Dr. Robert Kustra, EKU's president, granted her request and gave her until the end of the 1999–2000 academic year to complete her degree. However, under the modified terms of the contract, if Murray failed to obtain her doctorate by the end of the 1999–2000 academic year, her employment with EKU would end.

In January 2000, Murray requested another extension to complete her doctoral degree, but that request was denied. Murray failed to complete her doctorate before the end of the 1999–2000 academic

---

1. Senior Judge William R. Harris sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute (KRS) 21.580.

year; therefore, she was terminated from her employment. As of the end of the 2001–2002 academic year, Murray still had yet to complete her doctoral degree.

In September 2000, Murray filed a complaint against EKU alleging gender and disability discrimination. In September of 2002, EKU filed a motion for summary judgment, which was denied by the court in March 2007. In the same ruling, the court defined three criteria that had to be met in order for an individual to be considered "similarly situated" for purposes of Murray's gender discrimination claim. Firstly, the similarly situated individuals must come from the same college as Murray, the College of Health Sciences. Secondly, like Murray, they had to be full-time, tenure-track faculty. Lastly, they must have the contractual requirement of obtaining a terminal degree in their field, such as a doctorate. The court afforded Murray the opportunity for additional discovery. If no similarly situated individuals could be found, EKU would be permitted to renew its summary judgment claim.

Eight months later, in November 2007, EKU renewed its motion for summary judgment on both gender and disability discrimination. The court granted the motion in February 2008, and this appeal followed.

Murray argues that the grant of summary judgment was improper both on her gender discrimination claim and her disability discrimination claim. Regarding the gender discrimination claim, Murray contends that the trial court's definition of "similarly situated" was impermissibly narrow. Her argument regarding her disability discrimination claim is that the reasonableness of her second request for a one-year extension is a question of fact for the jury. Additionally, and for the first time, Murray argues to this Court that the facts of her case also support a claim of "mixed-motive" discrimination. That is to say,

although she never conceded the legitimacy of EKU's asserted grounds for her termination before the circuit court, she is now contending her termination was prompted by a combination of legitimate motives and illegally discriminatory motives.

■■■■ Generally, our Court will not consider a claim of error not first presented to the circuit court. *Akers v. Floyd County Fiscal Court,* 556 S.W.2d 146, 152 (Ky.1977). This principle was specifically applied in *White v. Baxter Healthcare Corp.,* 533 F.3d 381 (6th Cir.2008), the case quoted at length in Murray's brief to describe the standard for appellate review of a summary judgment in a mixed-motive discrimination case. The appellant in *White* presented two discrimination claims, only one of which was presented to the trial court as a mixed-motive claim. The Sixth Circuit stated, "White has presented his failure to promote claim as a single-motive discrimination claim.... Thus, we do not analyze his claim under the unique mixed-motive summary judgment analysis[.]" *White* at 390 fn. 4. Murray presented her discrimination claims as single-motive claims and we will review them as such.

The standard of review on appeal when a trial court grants a motion for summary judgment is *de novo* as only legal questions are involved. *Hallahan v. The Courier Journal,* 138 S.W.3d 699, 704–05 (Ky. App.2004). The movant bears the initial burden of convincing the court by the evidence of record that no genuine issue of fact is in dispute, and then the burden shifts to the party opposing the motion to present "at least some affirmative evidence showing there is a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 482 (Ky.1991).

■■■■ In order to survive a motion for summary judgment on her gender discrim-

ination claim, Murray needed to establish a *prima facie* case comprised of four elements. Murray had to show that (1) she was a member of a protected group; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) "similarly situated" nonprotected employees were treated more favorably. *Peltier v. U.S.*, 388 F.3d 984, 987 (6th Cir.2004). When determining what employees were "similarly situated," the plaintiff must find those that are similar to her in "all relevant aspects." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994); *see also Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir.1998).

The record shows that Murray failed to present sufficient evidence to establish the third and fourth elements of a *prima facie* cause of action for employment discrimination.

To be qualified for continued employment under the terms of her contract with EKU, Murray was required to obtain her doctorate. While it is true that Murray experienced challenging, even life-changing, medical problems, such changed circumstances did not affect operation of the contract. Even so, EKU did accommodate Murray by allowing her more time to obtain her doctorate than originally agreed. Absent proof she had acquired her doctorate, Murray was unable to demonstrate she was qualified for the position she sought.

With regard to the fourth element of her *prima facie* claim, Murray needed to identify persons who were not in a protected class, but who were otherwise similarly situated, and who were treated more favorably than her. She was not able to do so. Consequently, on appeal she argues that the criteria established by the circuit court for identifying such persons was too restrictive to comport with Kentucky law. We disagree.

The circuit court required Murray to find a similarly situated employee among the faculty of EKU's College of Health Sciences—a pool of approximately 100 faculty members. We do not find that such a limitation was unreasonable.

To establish a *prima facie* claim for disability discrimination, Murray needed to establish that: (1) she has a disability as defined under the Kentucky Civil Rights Act; (2) she was "otherwise qualified" to perform the requirements of the job, with or without reasonable accommodation; and (3) she suffered an adverse employment decision because of the disability. *Hallahan v. The Courier Journal*, 138 S.W.3d 699, 706–07 (Ky.App.2004).

Murray contends that the reasonableness of her request for a second extension to complete her degree is a question of fact for the jury, thereby making summary judgment in this case improper. However, even if she had been granted an extension through the 2000–2001 academic year, Murray still would not have been qualified for the position because, based on the record before us, Murray did not complete her degree before that time. In fact, based on the record, Murray has never accomplished this requirement.

Whether Murray's claimed accommodation was reasonable is a moot issue because Murray was not otherwise qualified for the position as specified in the contract. Since Murray failed to establish the second criteria of her *prima facie* case of disability discrimination, a motion for summary judgment in favor of EKU was proper.

For the foregoing reasons, the judgment of the Madison Circuit Court is affirmed.

ALL CONCUR.